UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tua Mene Lebie B., <br><br> Petitioner, <br><br> v. <br><br> William Barr, Attorney General; <br> Keven McAleenan, Acting Secretary DHS; <br> Michael Albence, Acting Director ICE; <br> Peter Berg, Director St. Paul F.O. ICE; <br> Eric Holien, Sheriff Kandiyohi County. <br><br> Respondents. | Case No. 19-cv-2177 (JNE/HB) <br><br><br> **REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Tua Mene Lebie B.'s Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. [Doc. No. 1]. Petitioner has been detained without bond, pending removal by United States Immigration and Customs Enforcement ("ICE"), since December 4, 2017. Petitioner argues that his lengthy detention without a bond hearing is unreasonable and violates his right to due process. (Pet. at 1.) He therefore seeks a writ of habeas corpus securing his immediate release, or, failing that, a bond hearing before either this Court or an immigration judge ("IJ"). For the reasons that follow, the Court recommends that the Petition be granted in part and denied in part.

1

**I.      Background**

    **A.      Petitioner's Citizenship and Immigration Status**

Petitioner is a citizen and national of Nigeria who entered the United States as a refugee on September 20, 1999. (Pet. Ex. L at 70 [Doc. No.1-13].) On March 8, 2002, Petitioner's immigration status was adjusted to lawful permanent resident. (*Id.*)

    **B.      Petitioner's Criminal History**

On September 24, 2001 Petitioner was convicted of Fifth Degree Criminal Sexual Conduct, a gross misdemeanor. (Pet. Ex. M at 75 [Doc. No. 1-14].) He was sentenced to 364 days in custody with 274 days stayed. (Pet. Ex. L at 70; Pet. Ex. I at 51 [Doc. No. 1-10].)

On May 6, 2016 Petitioner was convicted of violating Minnesota's predatory offender registration statute. (Pet. Ex. M at 75.) He was sentenced to another 364 days in custody, but that sentence was stayed in favor of two years' probation. (Pet. Ex. I at 52.)

    **C.      The Removal Proceedings**

Immigration officials commenced removal proceedings against Petitioner and took him into custody on December 4, 2017. (Pet. Ex. L at 71.) Petitioner was charged as removable under 8 U.S.C. § 1227(a)(2)(A)(ii) as an alien who has been convicted of two or more crimes involving moral turpitude. (Pet. Ex. M at 73.) The IJ ruled that Petitioner was deportable and on March 26, 2018 ordered him removed. (Pet. Ex. H at 44 [Doc. No. 1-9].) Petitioner timely appealed to the Board of Immigration Appeals ("BIA"). (*See id.*) On August 30, 2018 the BIA dismissed Petitioner's appeal and affirmed the IJ's

determination that Petitioner's convictions were for crimes involving moral turpitude. (Pet. Ex. H at 44–46.) The BIA's decision was a final order of removal.

On September 19, 2018 Petitioner appealed the BIA's removal order to the Eighth Circuit. (Pet. Ex. N ¶ 2 [Doc. No. 1-15].) On January 29, 2019 the Eighth Circuit granted Petitioner's motion for a stay of removal while his appeal is pending. (*Id.* ¶ 2.)

Petitioner filed the instant Petition on August 8, 2019, and Respondents answered on August 30, 2019. [Doc. No. 19.]

## II.     Analysis

### A.     Judicial Review of Immigration Detention

A writ of habeas corpus enables a person detained by the government to challenge the legality of his confinement and, if successful, obtain his release. *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973). 28 U.S.C. § 2241 confers jurisdiction upon federal courts to hear habeas challenges to the lawfulness of immigration-related detentions, but a court's jurisdiction to do so is limited. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003). This Court may not review a discretionary decision made by immigration authorities, such as the decision to order that a noncitizen be removed to another country. It may, however, review immigration-related detentions to determine if they comport with the demands of the Constitution. *Zadvydas*, 533 U.S. at 688. Accordingly, the Court's task is not to second-guess decisions made within the discretion of an immigration authority, but to assess the constitutional permissibility of the detention itself. *See Davies v. Tritten*, No. 17-cv-3710 (SRN/SER), 2017 WL 4277145, at *2 (D. Minn. Sept. 25, 2017).

## B.     Statutory Basis for Detention

There are two statutory bases for the government's authority to detain noncitizens: 8 U.S.C. § 1226 and § 1231.  8 U.S.C. § 1226 mandates detention while removal proceedings are pending for certain aliens who have committed specified crimes.  By contrast, § 1231 allows the government to detain individuals in the short period after the completion of removal proceedings, before they are deported.  8 U.S.C. § 1231, by its own terms, only applies during the 90-day "removal period," which commences after proceedings are completed and there has been an entry of a final order of removal. §§ 1231(a)(1)(A)–(B).  The parties disagree about which statute governs Petitioner's case.

Respondents point out that the BIA's decision in August 2018 to dismiss Petitioner's appeal amounted to a final order of removal.  (Resp. at 11.)  They argue that once a final order has been issued, the government's authority is thereafter derived from 8. U.S.C. §1231—even if his removal has been stayed.  (*Id.*)

Petitioner agrees that he *was* subject to a final order of removal for nearly five months, from August 30, 2018 to January 29, 2019, but argues that since the Eighth Circuit has stayed the removal order, he is no longer in the removal period.  (Pet ¶ 5.) That is, Petitioner argues that the Eighth Circuit's stay effectively turned back the removal period clock and then froze it: "The removal period in [Petitioner's] case has not started as a result of the Eighth Circuit's January 29, 2019 grant of a judicial stay. . ." (Pet. ¶ 37.)  This understanding of Petitioner's removability comports with the precedent of this district. *See Bah v. Cangemi*, 489 F.Supp.2d 905, 916 (D. Minn. 2007) ("[T]he

4

stay does not suspend the removal period; instead, it *defers the start* of the removal period.").

Petitioner's reading is also more consistent with the text of 8 U.S.C. § 1231(a)(1)(B)(ii), which states that "if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien," then the removal period does not begin until "the date of the court's final order." *See also Codina v. Chertoff*, 283 Fed.Appx. 432, 433 (8th Cir. 2008); *see also Bah*, 489 F.Supp.2d at 917 ("Once the Eighth Circuit granted [Petitioner's] petition for review and remanded his case to the BIA for further proceedings, his removal order was no longer administratively final."). Here, Petitioner's removal period cannot begin until the Eighth Circuit lifts its stay and issues a final order.

Neither § 1226 nor § 1231 expressly addresses the power to detain an individual who has appealed the BIA's determination and received a stay. But since Petitioner is not in a removal period, it is clear to the Court that the government cannot derive its authority to detain him under 8 U.S.C. § 1231. *See Tindi v. Sec'y, Dep't of Homeland Sec.*, 363 F.Supp.3d 971 (D. Minn. 2017), *report and recommendation adopted*, No. 17-cv-3663 (DSD/DTS), 2018 WL 704314 (D. Minn. Feb. 5, 2018) (abrogated on other grounds by *Ali v. Sessions*, No. 18-cv-2617 (DSD/LIB), 2019 WL 121946, at *1 (D. Minn. Jan 7, 2019). The Court, therefore, must examine whether a different statute grants authority to detain Petitioner without an actionable final removal order.

The majority of courts to have considered this situation have determined that when there is a judicial stay pending a decision, the government's authority for detention reverts back to § 1226. *E.g.*, *Hechavarria v. Sessions*, 891 F.3d 49, 51, 54–55 (2d Cir.

5

2018); *Leslie v. Att'y Gen.*, 678 F.3d 265, 270–71 (3d Cir. 2012); *Casas-Castrillon v. DHS*, 535 F.3d 942, 948 (9th Cir. 2008). And while the Eighth Circuit has not yet weighed in on how a judicial stay alters the government's authority to detain noncitizens, courts in this District have held that when a noncitizen has received both an administratively final order of removal and a judicial stay of removal, the detention authority derives from § 1226. *Tindi*, 363 F.Supp.3d at 977; *Enrique U. R. v. Sec'y, Dep't of Homeland Sec.*, 19-cv-1063 (MJD/BRT), 2019 WL 4120149 at *2 (D. Minn. June 17, 2019). Accordingly, this Court will consider Petitioner's detention to be pursuant to § 1226 and will proceed with an analysis of the constitutionality of that detention on those grounds.

    **C.**    **Habeas Review of Detention Without a Bond Hearing**

As already noted, 8 U.S.C. § 1226(c) requires the government to detain aliens while removal proceedings are pending if those aliens have committed specific crimes. Detaining removable aliens pursuant to 8 U.S.C. § 1226(c) for the "brief period necessary" for removal proceedings does not violate the Due Process Clause. *Demore v. Kim*, 538 U.S. 510, 513 (2003). In *Demore*, the Supreme Court reversed a decision by the Ninth Circuit Court of Appeals that found § 1226(c) to be unconstitutional on its face because it authorized detention but provided no mechanism to challenge the basis for detention. The Supreme Court affirmed the legality of the petitioner's six-month detention under § 1226(c), finding that his detention was reasonably related to removal and was for a short period of time. 538 U.S. at 526–31. The Court noted that the Due Process Clause does not require the government to employ the least burdensome means

6

when removing deportable aliens and that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 528, 531.

Interpreting *Zadvydas* and *Demore*, several federal courts of appeals—citing the canon of constitutional avoidance—construed § 1226(c) to include a reasonableness limitation on the length of time that an alien could be detained. *See, e.g.*, *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016), *withdrawn*, *Reid v. Donelan*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated*, *Sopo v. U.S. Att'y Gen.*, 890 F.3d 952 (11th Cir. 2018); *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), *overruled by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *cert. granted*, *vacated*, *Shanahan v. Lora*, 138 S. Ct. 1260 (2018).

In the wake of these decisions, the Supreme Court revisited the constitutionality of detentions under § 1226(c) in 2018 and rejected the analysis of the various courts in the above decisions. *Jennings,* 138 S. Ct. at 836. *Jennings* involved a class of non-citizens detained by immigration authorities under § 1226(c) and other detention statutes for periods lasting longer than six months. *Id.* at 838. The class had sought and obtained from the district court an injunction requiring immigration authorities to hold individualized bond hearings for each class member to assess whether the government was justified in continuing their detention. *Id.* Applying the constitutional avoidance doctrine and relying on the reasoning of *Zadvydas*, the Ninth Circuit had interpreted § 1226(c) to contain an implicit six-month time limit on the length of mandatory detention and upheld the requirement that detainees be provided individualized bond

7

hearings after six months of detention. *Id.* at 842, 846.

The Supreme Court reversed, finding the Ninth Circuit misapplied the constitutional avoidance doctrine. *Id.* at 842. The Court noted that § 1226(c) was clear on its face that persons detained under the statute could only be released for witness-protection purposes. *Id.* at 846. Therefore, the constitutional avoidance doctrine could not be used to reinterpret the statute to impose a six-month time limit on mandatory detentions. *Id.* at 842 (explaining the "canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction."). Without commenting on the constitutionality of the detentions at issue in the lawsuit, the Court remanded the case for further consideration. In doing so, the Court determined that a six-month *per se* rule of reasonableness was not supported by the text of § 1226(c), but it stopped short of assessing whether and to what extent a prolonged detention under § 1226(c) would exceed constitutional bounds. *Id.* at 847.

Thus, the constitutionality of prolonged detentions under § 1226(c) remains an open question. Various circuit courts of appeal have wrestled with that question. Noting that some extended detentions under § 1226(c) could raise a "serious risk" of violating the due process rights of detainees, the Third Circuit held that § 1226(c) only "authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes." *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231 (3d Cir. 2011). Similarly, the Sixth Circuit held that § 1226(c) authorizes the government to "detain *prima facie*

8

removable aliens for a time reasonably required to complete removal proceedings in a timely manner," but that habeas relief may be warranted if the "process takes an unreasonably long time." *Ly v. Hansen*, 351 F.3d 263, 268 (6th Cir. 2003). Both courts declined to adopt a bright-line time limitation, finding that the reasonableness of a detention is a product of the particular facts of a case and the extent to which a detention justifiably serves the goals of the statute. *Id.* at 271; *Diop*, 656 F.3d at 233. Though decided before *Jennings*, the fact-specific approach utilized in these cases appears consistent with the Supreme Court's analysis in *Jennings*.

The Eighth Circuit has not commented on the constitutionality of prolonged detentions under § 1226(c) after *Jennings*. But several courts in this District have addressed due process challenges to prolonged detention under § 1226(c) through careful examination of the facts of the case to determine whether the length of the detention was reasonable. *See, e.g.*, *Muse v. Sessions*, No. 18-cv-0054 (PJS/LIB), 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018); *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-cv-5055 (DWF/DTS), 2018 WL 2392205, at *5 (D. Minn. Mar. 26, 2018), *R. & R. adopted*, 2018 WL 2390132 (D. Minn. May 25, 2018); *Ahmed v. Sessions*, No. 18-cv-0438 (JRT/HB), R. & R. at 12–17 (D. Minn. May 2, 2018), *dismissed per stipulation*. In each of those cases, based on the specific facts and circumstances of the case, the court determined the length of the pre-removal detention was unreasonable. *Muse,* 2018 WL 4466052, at *4–6; *Mohamed*, 2018 WL 2392205, at *5–6; *Ahmed*, No. 18-cv-0438 (JRT/HB), R. & R. at 16.

Here, Petitioner challenges his detention as violating due process because it has

9

been prolonged unreasonably. The Due Process Clause of the Fifth Amendment requires that "no person shall . . . be deprived of life, liberty or property . . . without due process of law." U.S. Const. amend. V. Because the Fifth Amendment applies to all "persons," citizens and noncitizens alike are protected by its provisions. *Mathews v. Diaz*, 426 U.S. 67, 78 (1976). "Freedom from imprisonment . . . lies at the heart of the liberty that Clause protects," and "it is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Zadvydas*, 533 U.S. at 690; *Reno v. Flores*, 507 U.S. 292, 306 (1993).

In a recent decision from this District analyzing continued detention under § 1226(c), the Honorable Patrick J. Schiltz "follow[ed] the lead of virtually every court that has addressed the issue following *Jennings*—including two judges of this District— and [held] that a due-process challenge to § 1226(c) detention must be resolved by closely examining the facts of the particular case to determine whether the detention is reasonable." *Muse*, 2018 WL 4466052, at *3 (citations omitted). Courts utilizing this fact-specific inquiry have identified several factors that are particularly useful in identifying when "continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." *Id.* (quoting *Diop*, 656 F.3d at 232). These factors are:

> (1) the total length of detention to date, (2) the likely duration of future detention, (3) the conditions of detention, (4) delays of the removal proceedings caused by the detainee, (5) delays of the removal proceedings

10

    caused by the government, and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* (citing *Reid*, 819 F.3d at 500–01).[1]

In this case, Petitioner has been continuously detained since December 4, 2017—more than twenty months as of the date of this Report and Recommendation. (*Id.* ¶ 15.) Application of the relevant factors to the facts and circumstances in this case supports a conclusion that Petitioner's continued detention without an individualized bond hearing would violate due process.

First, with respect to the length of detention, Petitioner has been detained for twenty months, which far exceeds the "brief" period assumed in *Demore*. "[C]ontinued detention without inquiry into its necessity becomes more and more suspect" as detention continues past the six-month time frame described in *Demore*. *Diop*, 656 F.3d at 234. Detentions less than half the length of Petitioner's have been found unreasonable. *Muse*, 2018 WL 4466052, at *4 (*citing Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *1, 7 (S.D.N.Y. May 23, 2018) (eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (ten months); *Gordon v. Shanahan*, No. 15-261, 2015 WL 1176706, *3–4 (S.D.N.Y. March 13, 2015) (eight months)). The length of Petitioner's detention weighs in favor of granting relief.

---

[1] In a footnote, Judge Schiltz acknowledged that the First Circuit withdrew its decision in *Reid* following the Supreme Court's opinion in *Jennings*. *Muse*, 2018 WL 4466052, at *3 n.3. Judge Schiltz found, however, that the *Reid* factors established "a reasonable framework for balancing the due process interests at stake" even though they were "originally adopted in the context of reading an implicit reasonableness limitation into § 1226(c). . . ," and even though the *Reid* decision was withdrawn. *Id.* (quotation and internal quotation marks omitted).

Second, courts consider how long the detention is likely to continue in the absence of judicial relief. *See Muse*, 2018 WL 4466052, at *5. In postulating when detention will end, courts take into account the anticipated duration of all removal proceedings, including administrative and judicial appeals. *See id.* (citing *Ly*, 351 F.3d at 272) ("The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability."). Although it is not possible to predict when the Eighth Circuit Court of Appeals will rule on Petitioner's appeal, it is not likely to be before 2020. (Sanchez Decl. ¶ 4 [Doc. No. 1-15].) This second factor also favors Petitioner.

Third, courts examine the conditions of the alien's detention. *See id.* Aliens detained under § 1226(c) are subject to civil detention, not criminal incarceration. *Id.* (citing *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015)). "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* Petitioner is being detained at the Kandiyohi County Jail. (Pet ¶ 1.) While the record is not developed on this issue, Respondents have given this Court no reason to believe Petitioner is detained under conditions that are different from those of inmates who are serving criminal sentences or who are awaiting trial on criminal charges. Thus, this factor also appears to weigh in Petitioner's favor.

Fourth, courts consider the nature and extent of any delays in the removal proceedings caused by the alien. *See Muse*, 2018 WL 4466052, at *5. There is no evidence in the record that Petitioner has been less than diligent in pursuing his appeals. Consequently, this factor favors Petitioner.

Fifth, courts consider the nature and extent of the government's role in causing delay in the removal proceedings. *See id.* at *6. Here, there is no evidence in the record that Respondents have been less than diligent in these matters. This factor therefore weighs in favor of Respondents.

Finally, courts consider whether the proceedings will end in a final removal order. *Id.* Higher likelihood of the alien's removal means a longer period of detention may be reasonable. *Id.* The Court finds this factor does not favor one party over the other. True, the most recent decision in Petitioner's case—the Eighth Circuit's grant of a stay, which suggests Petitioner made "a strong showing that he is likely to succeed on the merits" (*see Nken v. Holder*, 556 U.S. 418, 426 (2009))—was favorable to Petitioner. But neither party analyzes the merits of the arguments presented before the Eighth Circuit, nor is this Court inclined to speculate about the likelihood of Petitioner's ultimate removal.

In sum, four factors weigh in Petitioner's favor, one weighs in Respondents' favor, and one favors neither party. Based on this analysis, the Court finds that the continued detention of Petitioner without an individualized bond hearing would violate his right to due process under the Fifth Amendment. A bond hearing at which the parties may present evidence and argument concerning whether Petitioner is a danger to the community or likely to flee "will protect both [Petitioner's] rights under the Due Process Clause and the government's legitimate interest in detaining a removable alien when such detention is necessary to serve the purposes of § 1226(c)." *See Muse*, 2018 WL 4466052 at *6.

### D. Forum and Legal Standard for the Bond Hearing

Petitioner's prayer for relief identifies three possible routes for remedying the constitutional violation: (1) an order mandating Petitioner's immediate release from custody; (2) a bond hearing held before the Court; or (3) remand to the IJ for a bond hearing with the instruction that "the government is to carry the burden of proof with clear and convincing evidence, and that the respondent's ability to pay is a factor to be considered." (Pet. at 25.)

The Court is not persuaded any of the requested remedies is appropriate here.[2] Because Petitioner has never had a bond hearing, the appropriate remedy is to order the agency detaining him to hold a bond hearing in the very near future. "The Supreme Court has never indicated the bond hearing process set forth in the statute and accompanying regulations is constitutionally deficient." *Ali v. Brott*, 770 Fed.Appx. 298, 301 (8th Cir. 2019). As to the request that the Court instruct the IJ on the standard of proof it should require of the parties, prior decisions in this District have declined to "render an advisory opinion," on that subject, holding that "the burden of proof and the quantum of proof at the bond hearing are decisions for the immigration judge in the first instance." *Bolus A. D. v. Sec'y of Homeland Sec.*, 376 F.Supp.3d 959, 963 (D. Minn. 2019); *see also Muse*, 2018 WL 4466052, at *6.

---

[2] The Court is unaware of any precedent in the Eighth Circuit allowing the federal district court to act, before the IJ has conducted a bond hearing, either to order the Petitioner's immediate release or to conduct the bond hearing itself. *But see Mendoza-Ordonez v. Lowe*, 273 F.Supp.3d 528, 539 (M.D. Pa. 2017) (remanding the case to the IJ but retaining jurisdiction to conduct its own bond hearing "if necessary").

**III.     Recommendation**

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241 be **GRANTED IN PART** and **DENIED IN PART**, as follows:

1. If the District Court adopts this Report and Recommendation, an immigration judge must provide Petitioner with a bond hearing within thirty days of the District Court's order.  At the bond hearing, the immigration judge must make an individualized determination regarding whether detention is necessary to protect the community or to prevent Petitioner from fleeing; and

2. Petitioner's request for immediate release should be denied.

3. Petitioner's request for a bond hearing in front of this Court should be denied.


Dated: September 18, 2019             s/ *Hildy Bowbeer*
                                      HILDY BOWBEER
                                      United States Magistrate Judge


**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).