UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Tua Mene Lebie B.,

        Petitioner,

v.

William Barr, Attorney General; Kevin
McAleenan, Acting Secretary, DHS;
Michael Albence, Acting Director, ICE;
Peter Berg, Director, St. Paul F.O. ICE;
Eric Holien, Sheriff, Kandiyohi County,

        Respondents.

Case No. 19-cv-2177 (JNE/HB)
ORDER

In a Report and Recommendation ("R&R") dated September 18, 2019, the Honorable Hildy Bowbeer, United States Magistrate Judge, recommended that the Court grant in part and deny in part Petitioner's Petition for Habeas Corpus. ECF No. 23. Judge Bowbeer recommended that the Court deny Petitioner's requests for immediate release or a bond hearing in front of the Court, but grant Petitioner's request for a bond hearing in front of an immigration judge for an individualized determination on whether his continued detention is necessary. ECF No. 23 at 15. Respondents object to the R&R on the basis that it incorrectly applied 8 U.S.C. § 1226, instead of 8 U.S.C. § 1231, to Petitioner's detention, and that alternatively, the Court should not adopt the R&R's analysis under § 1226.

The Court has considered Respondents' objections de novo, as required by 28 U.S.C. § 636(b)(1) and local Rule 72.2(b). The Court overrules Respondents' objections and adopts the R&R to the extent it is consistent with this Order.[1]

A. Statutory Basis for Petitioner's Detention

There are two statutory bases for the government's authority to detain non-citizens: 8 U.S.C. § 1226 and § 1231. Section 1226(c) mandates detention while removal proceedings are pending for aliens who have committed certain crimes, such as the ones Petitioner has committed. Section 1231 allows the government to detain individuals in the short period after the completion of removal proceedings, before they are deported. Neither § 1226 nor § 1231 expressly address the power to detain an individual who has appealed the Board of Immigrations Appeals' ("BIA") determination and received a stay from the Eighth Circuit. The Eighth Circuit also has not addressed the issue.

Respondents object to the R&R on the basis that § 1231 applies. Respondents assert the BIA's decision in August 2018 to dismiss Petitioner's appeal amounted to a final order of removal and the Eighth Circuit's stay of the case paused or suspended the removal period under § 1231 rather than reverting the basis of detention to § 1226.

The Court disagrees with Respondents and finds that § 1226 applies here. An example from *Bah v. Cangemi* explains the Court's reasoning:

> Suppose that an alien's order of removal becomes administratively final on Day 1 because the BIA dismisses the alien's appeal. The alien then petitions the court of appeals for review of the dismissal and asks for a stay. The court of appeals does not rule on the stay order . . . But suppose that, on Day 201, the court of appeals grants the stay. Under § 1231(a)(1)(B), the stay does not

---

[1] The Court adopts the R&R's recitation of the facts, which the parties do not dispute.

2

> suspend the removal period; instead, it *defers the start* of the removal period. Seen from Day 200, the removal period began on Day 1. But seen from Day 202, the removal period never began. And if the removal period never began, neither did the *Zadvydas* clock, and § 1226 (the provision that applies before and during immigration proceedings) rather than § 1231 (the provision that applies after immigration proceedings) governs the alien's detention.

489 F. Supp. 2d 905, 916 (D. Minn. May 1, 2007). This case resembles the preceding example. Petitioner's order of removal was administratively final between August 30, 2018 and January 28, 2019 because the BIA had dismissed his appeal and the Eighth Circuit had not ruled on his stay. *See* ECF No. 1, Ex. H at 5. But when the Eighth Circuit granted a stay, on January 29, 2019, the stay deferred the start of Petitioner's removal period. *See* ECF No. 1, Ex. N, Sanchez Decl. ¶ 2. Seen from January 30, 2019, the removal period never began and § 1226 therefore governs Petitioner's detention.

B. Petitioner's Detention Under § 1226

Respondents then object to the R&R's analysis of the *Muse* factors in evaluating the constitutionality of Petitioner's detention under § 1226. There are six factors in this analysis: (1) the total length of detention to date, (2) the likely duration of future detention, (3) the conditions of the detention, (4) delays of the removal proceedings caused by the detainee, (5) delays of the removal proceedings caused by the government, and (6) the likelihood the removal proceedings will result in a final order of removal.[2] *Muse v.*

---

[2] While the parties refer to these factors as the *Muse* factors, they originate from the First Circuit. *See Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016), *withdrawn*, *Reid v. Donelan*, Civ. No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018). These factors "represent a reasonable framework for balancing the due process interests at stake even though they were originally adopted in context of reading an implicit reasonableness limitation into § 1226(c) and even though the First Circuit withdrew the *Reid* decision after the Supreme

3

*Sessions*, Civ. No. 18-0054 (PJS/LIB), 2018 WL 4466052, at *3 (D. Minn. Sept. 18, 2018). Respondents dispute the R&R's analysis of the first four factors and contend the R&R should have additionally considered public safety in its analysis.

 1. The Total Length of Detention to Date

Respondents argue the R&R erred in finding that Petitioner's detention of then 20 months, now 22 months, weighs in favor of granting relief. Respondents assert the Court should consider the reason for Petitioner's detention rather than the time period itself: "Petitioner's detention has been necessitated by the due process he has been availing himself of before the BIA, and since filing his petition for review on September 19, 2018, the Eighth Circuit." ECF No. 27 at 7–8. Respondents also assert that the R&R impermissibly applies "a near-bright-line rule that sees either six months or one year as a type of benchmark" of a detention violating the Due Process Clause. ECF No. 27 at 6.

In *Denmore v. Kim*, the Supreme Court held that deportable criminal aliens, such as Petitioner, may "be detained for the *brief* period necessary for their removal proceedings." 538 U.S. 510, 511 (2003) (emphasis added). Constitutional difficulties arise, however, when detention under § 1226(c) ceases to be "brief." The Supreme Court has warned that indefinite detention during removal proceedings would raise "serious constitutional concerns." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). The Supreme Court has not, however, specified what limitations the Due Process Clause places on the length of a detention under § 1226.

---

Court decided *Jennings*. *Muse v. Sessions*, Civ. No. 18-0054 (PJS/LIB), 2018 WL 4466052, at *3 (D. Minn. Sept. 18, 2018) (internal quotations and citations omitted).

The Court finds that the length of Petitioner's detention weighs in favor of granting relief. Over 22 months have passed since ICE first took Petitioner into custody. He still has not received any individualized determination regarding whether he is a danger to the community or likely to flee. Petitioner's detention has now lasted over three times as long as the detention at issue in *Denmore*. *Denmore*, 538 U.S. at 530–31 ("Respondent was detained for somewhat longer than the average—spending six months in INS custody . . . ."). As the R&R pointed out, detentions less than half the length of Petitioner's have been found unreasonable under the Due Process Clause.

True, a few courts have upheld § 1226(c) detentions that lasted more than a year. Respondents cite to two cases decided before *Denmore*. *See Doherty v. Thornburgh*, 943 F.2d 204, 212 (2d Cir. 1991) (" [I]f Doherty had agreed to deportation in the first place, he would not have been detained at MCC for the past eight years"); *Thevarajah v. McElroy*, Civ. No. 01-3009, 2002 WL 923914, at *5 (E.D.N.Y. Apr. 30, 2002) (upholding a detention of over a year). It is unclear whether *Doherty* is good law in light of *Denmore's* holding that a § 1226 detention be "brief" and *Thevarajah* does not apply here. *See Thevarajah*, 2002 WL 923914, at *3 ("Petitioner was never detained pursuant to Section 1226 . . . it has no bearing on the instant case.").

The Court has found cases decided after *Denmore* that have upheld detentions of over a year. *See, e.g.*, *Dryden v. Green*, Civ. No. 18-2686, 2018 WL 3062909, at *5 (D.N.J. June 21, 2018) (finding no due-process violation for detention lasting "just over a year"); *Maynard v. Hendrix*, Civ. No. 11-0605, 2011 WL 6176202, at *1–2, *4 (D.N.J. Dec. 12, 2011) (holding that an 18-month detention did not violate the implicit reasonableness

5

requirement in § 1226(c)). But Petitioner's circumstances are materially different from those cases. In *Dryden*, the court held that the alien's nearly 13-month detention did not violate the Due Process Clause because "the majority of the delay in [the alien's] immigration results [was] directly attributable to [his] own delay in acquiring counsel and ultimately filing his petition for relief[.]" 2018 WL 3062909, at *5. And in *Maynard*, the court held that the alien's 18-month detention was not unreasonably prolonged because delays in the removal proceedings were "attributable almost exclusively to [the alien's] repeated requests for adjournments." 2011 WL 6176202, at *4. By contrast, Petitioner has not engaged in any dilatory conduct. Petitioner "has merely raised a colorable claim against deportation and vigorously contested removal, as is his right." *Muse*, 2018 WL 4466052 at * 4 (internal quotations and brackets omitted). Petitioner exercising his right to appeal does not preclude his right to an individualized determination regarding whether he is a danger to the community or likely to flee when his detention has already lasted 22 months.

Finally, Respondents assert that the Supreme Court's decision in *Jennings* rejected a bright-line approach of using a benchmark time period of six months or a year in evaluating whether a detention under § 1226(c) violates the Due Process Clause. The R&R did not encroach on *Jennings'* holding in considering the length of time Petitioner has been detained. *Jennings* held that the language of § 1226 clearly mandates that certain removable aliens, such as Petitioner, be detained for the entire duration of removal proceedings and that the canon of constitutional avoidance cannot be used to alter the terms of a clear statute. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 846–48 (2018). The Supreme Court expressed

no view, however, on the limitations the Due Process Clause places on the time limit of a § 1226 detention.

2. The Likely Duration of Future Detention

Respondents argue the likely duration of Petitioner's future detention should not be considered because it does not go to the merits of the due process question. Alternatively they argue that "Petitioner's removal proceedings are likely in their final stages" and that the R&R did not consider Petitioner's extension requests or "the government's evidence suggesting that once the stay is lifted, prompt removal is likely . . . ." ECF No. 27 at 10.

The Court overrules Respondents' objections. Respondents cite to no legal authority for their proposition that Petitioner's likely duration of future detention, in the absence of judicial relief, should not be considered. An individual who would not normally be subject to extended detention cannot be so detained merely because he exercises his right to appeal. *See Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) ("The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability."). If the Court does not grant relief, there is a very real possibility that Petitioner will be detained for another year or more—that is in addition to the 22 months he has already been detained. It is unknown when the Eighth Circuit will issue a decision and even after the Eighth Circuit makes a decision, the Government or Petitioner may pursue a rehearing or appeal the decision to the Supreme Court. The likelihood of such prolonged detention in the absence of this Court's action most certainly weighs in favor of granting relief.

Petitioner's requests for extension go to factor four, which the Court discusses below. The likelihood of success of Petitioner's appeal goes to factor six, which the Court

does not address because Respondents themselves stated the R&R was "correct in declining to 'speculate about the likelihood of Petitioner's ultimate removal.'" ECF No. 27 at 12 (quoting R&R at 13).

3. The Conditions of Confinement

Respondents question the relevancy of this factor in a due process analysis and alternatively argue that Congress knew detainees under § 1226 would be held in criminal facilities. The Court finds the conditions of confinement are indeed relevant to whether an individual's constitutional rights have been violated. "[D]ue process requires us to recognize that, at a certain point—which may differ case by case—the burden to an alien's liberty outweighs a mere presumption that the alien will flee and/or is dangerous." *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 222 (3d Cir. 2018) (internal quotations and citations omitted).[3] The parties do not dispute that the proceedings at issue are civil, not criminal; the Court must assume then that the purpose and effect of the proceedings is nonpunitive. "[T]he reality [is] that merely calling a confinement 'civil detention' does not, of itself, meaningfully differentiate it from penal measures." *Id.* at 220 n.9 (internal citation omitted). The Court cannot ignore that Petitioner is being held in detention at the Kandiyohi County Jail under the same conditions as those serving terms

---

[3] While *Guerrero-Sanchez* involved an alien held under § 1231, the Third Circuit noted there is no "substantial distinction between the liberty interests" of aliens detained under either statute because "regardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged detention . . . ." *Guerrero-Sanchez*, 905 F.3d at 222 (internal quotations and citations omitted).

8

of imprisonment as a penalty for their crimes. The conditions of Petitioner's detention weigh in favor of granting relief.

4. The Delays of the Removal Proceedings Caused by the Detainee

Respondents object to the R&R's finding that there is no evidence in the record that Petitioner delayed the proceedings. Respondents assert Petitioner delayed the removal process by seeking a stay of removal from the Eighth Circuit and obtaining two extensions to file a reply brief when the Eighth Circuit indicated the case had been screened for oral argument.

Petitioner availing himself of his rights by seeking a stay of removal from the Eighth Circuit does not constitute a dilatory tactic to put off the final day of deportation. An alien should not be punished for raising legitimate defenses to removal. *See Ly*, 351 F.3d at 272 ("An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him.").

As for seeking extensions to file a reply brief, there is no evidence that Petitioner's requests for extension—or Respondents' similar request for a three-week extension to file its principal Eighth Circuit brief—is the type of delay anticipated by this analysis. This factor is meant to get at "deportable criminal aliens [raising] frivolous objections and string[ing] out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order their release." *Muse*, 2018 WL 4466052 at \*5 (quoting *Ly*, 351 F.3d at 272). The record does not reflect that Petitioner has delayed the removal proceedings, weighing in favor of granting relief.

5. Public Safety

Respondents finally object to the R&R because it did not consider the factor of public safety in its due process analysis. Some courts compare the length of the § 1226 detention with the length of the sentence imposed for the "predicate" conviction that rendered the detainee removable. *See e.g.*, *Reid v. Donelan*, 991 F.Supp.2d 275, 281 (D. Mass. 2014). The Court does not find this factor particularly helpful. Section 1226 detention and criminal incarceration are different types of custody imposed for different reasons by different sovereigns. The length of a sentence imposed on an alien to punish him for a predicate criminal offense has no bearing on whether the alien's current civil detention by the federal government under § 1226 is constitutional.

In short, the Court adopts the recommended disposition. Therefore, IT IS ORDERED that Petitioner's Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241 is GRANTED IN PART and DENIED IN PART, as follows:

1. An immigration judge must provide Petitioner with a bond hearing within thirty days of this Order. At the bond hearing, the immigration judge must make an individualized determination regarding whether detention is necessary to protect the community or to prevent Petitioner from fleeing;
2. Petitioner's request for immediate release should be denied; and
3. Petitioner's request for a bond hearing in front of this Court should be denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: November 5, 2019                                   s/ Joan N. Ericksen
                                                        Joan N. Ericksen
                                                        United States District Judge